Our next case is number 16-2001, Credit Acceptance Corporation v. Westlake Services. Mr. Nemec. Thank you, Your Honor. To please the Court in my remarks this morning, I will direct the commentary to the two fundamental errors in the Board's analysis of the patentable subject matter decision in the case below. First, the Board's inappropriately and oversimplified definition of the abstract concept to which the claims are purportedly directed, the Court holding, Board, forgive me, the Board holding that the claims at issue in this CBM proceeding were directed to the abstract concept of processing an application for financing, and in so holding, ignoring the limitations of the claims and essentially predestining the claims to fail Step 1 of ALICE. The second defect in which I would like to remark is the failure of the Board to conduct a proper Step 2 ALICE analysis by deliberately and explicitly failing to consider the ordered combination of the claims in analyzing Step 2. Are you giving up on the estoppel question then? No, Your Honor, and I'm happy to address questions and I will address that. I thought it would make sense to address the merits. Well, you sort of ignore the synopsis and shod decisions in your initial brief when you argue the estoppel issue. You understand that those decisions were under the IPR statute, but the IPR statute is identical to the post-grant review statute, and don't you lose under those decisions? No, Your Honor, we submit that we do not. Why not? While the language in the IPR provision section 315 parallels the language in section 325, first, the language of section 315 was not what was being construed in synopsis. So what? It's the same language. It was the language of section 318 defining what constitutes a final written decision in that case. With regard to Shaw, the issue was addressed, I would submit, in dicta as to how estoppel under section 315, again, would apply, but was not an issue in that case. That was a question of whether redundant grounds should, in fact, have been considered and gone to the final written decision. So Shaw, I would submit, is not binding even as to the 315 issue. Synopsis decides the same issue under the same language of a different section. What's your basis for arguing that those two different sections should have a different interpretation? Even if we were to assume that section 315 definitively states the binding law on the application of estoppel under section 315, I would submit that there are distinctions between IPR proceedings and CBM proceedings that would justify a different outcome. What are the differences? Distinctions being, first of all, the scope of the proceeding. You've got a rather narrow proceeding in IPR, and it's open to any member of the public who can make a petition and raise a case. Just a handful of defenses that are available. CBM, and there is a one-year built-in limitation that times out IPRs in the event that litigation is pending, something that's not present in CBM, importantly. Secondly, you've got a defined class of people in the CBM category who can bring proceedings. You've got a more narrowly constrained group of patents that are subject. But most importantly, you've got a very broad set of defenses, and the concept and the thinking of Congress as reflected in the Federal Register remarks cited in our briefs indicates this was meant to be... How would all that affect the application of estoppel, though? Pardon, Your Honor? You've given us kind of like structural differences between the two types of procedures, but with respect to estoppel, I mean, what difference do those differences, distinctions that you're pointing out, what difference does that make to the application of estoppel? The difference, Your Honor, is that the regime that exists now, based on the Board's interpretation of the 325 estoppel in this case, would essentially allow for perpetual petitions, one after another, picking one claim, perhaps relying on a new intervening case, a new piece of art that's And the point has been made that 325D estoppel could be invoked upon the discretion of the Patent Office. That didn't happen in this case, and the fact of the matter is this was supposed to be an estoppel as a matter of right, not something... How do the differences that you're talking about support a different interpretation of identical language in the two sections? In the context of a patent owner who is seeking to enforce their patent rights against a competitor just as is the case in this overall set of litigations, the IPR provision will time out the patent opponent's right to bring challenges to the patents within one year. In this case, there is no such protection under CBM, and that's what allows one after another petition to be filed. In this case, it's two. Hypothetically, it could be one for every claim in the patent. It could go on for many, many, many years. That protection doesn't exist. In the meantime, the underlying district court action might remain stayed, and the patent owner's rights to assert and defend their issued patent rights is tied up, even if not all the claims are necessarily at issue in the proceedings. So there is a meaningful distinction, in our view, between the two sets of proceedings. There is a difference between the two sets of proceedings, but that doesn't answer why the same language turns a different construction in the two types of proceedings. In essence, the basis that we advocate here, assuming that you apply the same construction to the terms, it's just as in claim construction. If the same word appears in multiple places in the claim, it's presumed to have the same meaning, but that can be rebutted based on evidence that something else was meant to occur. In what case involving statutory construction has the Supreme Court, for example, given different meanings to identical language in the same statute? I can't cite a case that fits the description you just gave, Your Honor, and I would suggest these are, in fact, different statutes. So these are different statutory provisions. Again, if we accept that Shaw is the definitive law in Section 315, we're advocating a construction of parallel language that would lead to a different result. What's the application of Cuozzo in this case, in your view? In terms of appealability of the issues, Your Honor? This case, in our view, would fall within one of the recited exceptions to Cuozzo. First and foremost... Why wouldn't Estoppel be in an ordinary dispute concerning a decision to institute? Just run of the mill, ordinary dispute. First and foremost, Your Honor, there is no challenge in this appeal to the decision to institute CBM review. The facts that present the basis for our argument under 325e1 for Estoppel came into existence after the institution decision. It was triggered by the issuance of the final decision in the first CBM proceeding. So we don't challenge the fact that Estoppel wasn't affected at the institution stage. This is an appeal of the final written decision in the CBM. This is an appeal of the Board's denial of our motion to terminate the proceeding. Do we have jurisdiction to review that decision? I didn't hear the first part of that. Do we have jurisdiction to review that decision? You do, Your Honor. Just as you do other subsidiary rulings in CBM and IPR proceedings, whether it be motions to amend, motions to supplement the record, such as in the red line detection case. The fact that there is not explicit reference in the final written decision to this issue of Estoppel does not preclude... In a situation like this, doesn't Estoppel go to the decision whether or not to initiate? It would go to the decision of whether or not to initiate if, in fact, all the pieces were in place at the time of the institution decision. If the final written decision in the first CBM had been issued at that time, the argument would have been that the Board was barred from instituting review. But this particular statute doesn't even mention institution. It prohibits the request or the maintenance of a proceeding in the event of the enumerated circumstances, in the event of the Estoppel. So it is not linked to the institution decision. It fits the category of cases not barred on appeal, as articulated in COASA. Those, quote, less closely related to the institution decision. Or I would submit questions of jurisdiction. Were the proper parties to a proceeding of this nature? But as a factual matter, there is no appeal in this case of the institution decision and therefore the holding in COASA would not apply. If there are no further questions on the 325B issue, I'll return to the 101 analysis. Go ahead. Thank you, Your Honor. I was summarizing the two points that I would address, and the second point being the failure to conduct an analysis of the ordered combination of elements under Step 2 of the Alice test in contravention of the directives that this Court gave most recently in the BASCOM case. On the first point, the definition of the abstract concept to which the claims are directed, the Board says it is the abstract concept of processing an application for financing a purchase. In so doing, acknowledged that there are multiple limitations in the claims. Acknowledged that there may be evidence that some of these are not routine, but explicitly held with respect to the enumerated elements, things like the servers on which processing is occurring, databases, user terminals, computer-implemented elements like this with descriptions that are specific to the functionality those elements will have. They were set aside, and the point was made. So the steps that are set out in the claim culminate with the generation of a financial package, and I think that's probably the goal. When you say to hear of the claim as a whole, it should generate this financial package. Tell me in the claims how that financial package is generated. So Your Honor, the financial package is generated by, if you look earlier in the claim, taking say claim 25 as an example, appendix 402, claim 25 delineates for the reader the various computer components that are linked together so that the information from these sources can be compiled. First, the user terminal, where information regarding the purchaser's capability to buy is input. Where are you at, Counselor? I am at, I'll give you a page in line here. This is column 15 of the patent at appendix 402. Did you say claim 25? Correct, Your Honor. The user terminal, where the customer, the purchaser's information is input. Well, that's just a generic item, isn't it? A user terminal full stop is a generic item. It's got a specific application here, and again, the point that I'm making in this appeal is not necessarily that every one of the enumerated items was in some way unconventional, but that the collection of them was. Throughout this claim 25, there's mention of the financial package, a database for storing information. It goes on and says about receiving financial information, a server that has access to database, and then a server generating a financial package for each product. This is a system for generating financial packages. You have in the claim 25 a server for generating, but how is that financial package generated? The computer system will compile all that information that the actual generation occurs and on the server of the credit underwriter, the bank for instance. You got to have more than just, I'm going to put this into the slot. There's a box that says computer with a slot. I'm going to put this information there, and then on the other side comes out a financial package, and that's okay, but as long as you show me in the claims how that financial package is generated, and that's what I don't see. Your Honor, I would respectfully disagree that that is required for purposes of satisfying the patent eligibility test. To me, that's more a question of enablement. Does this patent sufficiently inform a person skilled in the art how to actually implement? I think that putting together financial information is an abstract idea, and I think that's where you start with. You gather information, you collect information, and you tell me that because you put it into a computer, outside comes a financial package. I think that's precisely step one of the 101 inquiry. Are the claims directed to, in this instance, an abstract idea? If you gave me more than what you pointed out, then I would say, well, yes, perhaps, or yes, it does. But I don't see how anything in the claim that tells me how the financial package is generated, and because of that, I see this claim as being aspirational. I understood, Your Honor, and in this discussion, we continue to focus on only one of the many claim limitations. We're focusing on the generation, whether we're focusing on the user terminal. What was overlooked by the board... I asked you to point me to the claim that showed how the financial package is generated. You've taken me to 25. That doesn't do it. I won't be able to point you, Your Honor, to a claim in the patent that describes the precise manner in which the manipulation of data occurs. That's the problem. It doesn't exist. And, again, I submit, Your Honor, that's not required to support patentability. What we have here is a method, as recited in the claims, whether it be claim 10, 25, or 14, the independent claims here, that is contrasted to methods used in the prior art that were different. On page A395, in the background, the prior art techniques for performing auto-financing are described. It's an iterative method, information taken manually, sent to banks, compiled. You have to go back again if there's a change in data. You have to go back again if there's a change in the desired purchase. What is not on this record is any evidence that a method that combines these three electronic data sources electronically automates the process of, at one time, calculating a finance package for every item in the inventory, taking the user's purchasing ability information, combining that with the lending ability of the creditor, and generating this comprehensive report such that the customers and the dealers can look and pick from this palette of choices that this computer system has generated to select the most attractive financing application. That is narrower, decidedly narrower, than the concept of processing an application, full stop, and it's not something that there's been any showing existed in the prior art. It is, in fact, a new method. I think you're well over your time. We'll give you, unless Judge Reina has any further questions, we'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Sells, is that right? Excuse me, Your Honor. John Van Loban, Sells 4. Wesley, Your Honor, I'd like to start off with the questions that Your Honor asked at the start. First of all, we believe that there is no jurisdiction for this court to consider the estoppel decision of the court because it did, as Your Honor has pointed out, concern the institution decision, and it's therefore not a view. I'm not sure that that's necessarily what we pointed out. I mean, the statute seems to say that you can't maintain something where there's an estoppel, and why isn't someone who's challenging a final decision and saying, well, they were estopped, or they shouldn't have gotten the final decision that they did, why isn't that an appealable issue? Because I believe it more fairly is characterized as an attack on the institution decision, because in this case, particularly, CAC challenged on estoppel grounds in their preliminary response the institution. Suppose they'd been clearer about it. Suppose they said you can't enter this final decision because there's an estoppel. Well, they couldn't in this case because the timing doesn't work, because there was an overlap between the two CBMs that the final written decision from the first CBM hadn't yet issued, and so they couldn't make the 325E argument. But hypothetically, suppose that there's a decision, and the argument is that there should have been an estoppel, and you're saying that's not appealable? I believe it's not appealable because it essentially is an attack on the institution decision. It relates to the substance, and so no, I don't believe it is appealable. But in this case, even if it were appealable, as Your Honor pointed out, the synopsis case would control here. There was no final written decision on the claims that are the subject of this CBM. So whether hypothetically the court can rule on the appeal of that estoppel decision, the PTAB got it right because the claims that are issued here, 10 to 12 and 14 to 33, were not the subject of a prior final written decision. There's no ground, there's no basis for this court to construe this estoppel statute any differently than it did the IPR statute. I think the court was quite right about that. So estoppel is not a reason for this CBM to have gone forward as it did. And then on the substance, CDC has left to argue that somehow the EnFISH decision or the Bascom decision require a different result from what the PTAB did here and how they analyzed the claims that are at issue. And in our view, one thing that my opposing counsel neglected to mention was that the PTAB here wasn't starting from scratch when it was deciding what the abstract concept was here. In the first CBM, it analyzed Claim 1 and it found that it was directed toward an abstract concept and held that the abstract concept was processing an application for financing a purchase. That's Claim 1. That decision went final, they didn't appeal. And Claim 10, as the PTAB found in this case, is really just it's Claim 1 implemented on generic computer systems. And I think as Judge Reina, as you were pointing out, that the generic computer components here don't do anything different or extra additional as this court's cases have discussed that would take this into patentable subject matter. Your Honor pointed out Claim 25 or we're discussing with counsel Claim 25 and how a finance package was generated. And you're quite right that the patent doesn't discuss how that is done. And the reason why that's a problem under a 101 analysis is that really describes the preemption risk that you have here because you have an abstract idea and this claim is meant to capture or claim all types of financial package generation no matter how you did it. And that is a problem. And so we believe, of course, that the PTAB did get it right that they described the abstract idea properly. We don't agree that the PTAB failed to conduct a proper prong to analysis under Alice as well. It's clear from the final written decision itself that they not only considered the individual elements that a patent owner focused on, but all the elements as an ordered combination. And what doesn't appear in CAC's papers and in the argument here is, well, okay, so you're taking issue with how they resolved that ordered combination issue, but what is it? And the answer is there really isn't anything because the computer components that are in these claims are all just generic computer components. There's nothing special about them. And there's nothing in the specification that talks about how they would be special or different or used differently. And certainly there's not in the claims. And we believe that the PTAB resolved those issues properly, appropriately, under prong one and prong two of Alice. We argued below that these claims are very similar to the claims that this court found in Dealer Track, Mortgage Grader. Similar cases are just not patentable subject matter. And there doesn't seem to me to be a basis to come to a different result here. And with that, Your Honor, unless you have questions, I'll reserve the rest of my time for the Director. Thank you. Ms. Craven. Good morning, Your Honors, and may it please the Court. Under this Court's current case law, the Board's motion to terminate decision is unreviewable. Petitioner, specific statute. Well, that may be, but the question is whether the final decision can be challenged on the ground that there was an estoppel. And it seems to me, maybe a little difficult to argue, that if the final decision were precluded by estoppel, that there's no way to challenge it. I think the estoppel issue is closely related, though, to that decision to institute in the same way a sine estoppel is in Husky. It's related to whether the correct petitioner brought the petition or maintained the petition, as opposed to the Board's ultimate authority to invalidate this patent, the 807 patent in a CBM proceeding. So I think it's consistent with this Court's case law that the estoppel issue under 325E1... But wouldn't estoppel apply more to the statutory limitations imposed on the PTO in handling estoppel cases? So, this Court is taking Y51 en banc, which will rule on the statutory limits of the Court's ability to review decisions. And I don't want to prejudice that case here. I think every statute imposes a statutory limit. I don't know if that answers the reviewability question. I think under the Court's current case law, because it's a petitioner-specific and doesn't go to the Board's ultimate authority, it's unreviewable now under this Court's case law. Suppose you had a situation in which the Board actually rendered a final written decision on a particular claim, claim 11, and then found that it involved patentable subject matter. And then a challenger comes in and starts a new proceeding. The Board goes through a new proceeding and reaches the opposite conclusion with respect to claim 11 and says that it's unpatentable subject matter. There's no way to challenge that as being a stop by the first decision? Well, I think in that case, if there were two different petitioners... Well, it's the same petition. Well, if they had a final decision on unpatentability on that claim, then estoppel would apply at the time that decision came out. There'd have to be a way to appeal that, right? You'd have to be able to challenge that on appeal, no? In the second petition, you could ask the Board... It depends on the timing. It could be in front of the Board, file, as it was done here, a motion to terminate, because estoppel now applies because a final decision has come out with respect to claim 11 on a ground that wasn't in the first petition, and thus there are stopped. And so I think the Board does its best to make sure that it's correctly applying the estoppel statute and not reaching inconsistent results on different claims. If they reach inconsistent results, there's no way to challenge that on appeal? Well, I think the inconsistent results on the patentability of the claim is challenged as to the final written decision with respect to patentability in the final written decision. But you can't raise the estoppel issue? Well, the estoppel issue would just go to whether the correct petitioner made... Granted, as they requested the petition, a correct, proper petitioner could have been there, as in Husky with a signing estoppel. If a proper petitioner could have requested the IPR, then the fact that this petitioner is estopped was not reviewable because it doesn't go to the Board's ultimate authority to invalidate, as in if the question was this is a CBM patent or they had invalidated under 112 in an IPR proceeding. The PTO took the extraordinary step to make this case a precedential case, correct? That's correct. In this case, we have the estoppel issue and we have the Section 101. What is it that was precedential, the estoppel issue? Just the estoppel, so just the Board's decision on the motion to terminate. Once you make a decision precedential, is it treated as a rule after that point in time? It is binding on all the Board panels before the Board, yes. So it's treated as much like a regulation would be that guides the PTO's actions? That's correct, if you think of it that way. If that's the case, then why isn't that reviewable? You've given us a statutory interpretation by making this precedential. I think the fact that it's precedential is just to help with the consistency at the Board, just as when this Court goes on bonk... That's not what you said. You said it turns it into a rule. My understanding is that the PTO looks at these types of rules almost like a regulation. It's different from a regulation because it can be undone if the interpretation of the Board somehow would become in conflict with this Court's interpretation of estoppel. The precedential manner of that... On this particular case, it's your declaration that this is a rule that we now establish with respect to estoppel and the reviewability of these decisions. Why could we not review that? It's not a rule in terms of the reviewability of it. It's a rule, it's a precedential opinion for the Board... Would you say it's a declaration on the statutory limitation of the PTAC to conduct a review? It is how the Board will interpret the estoppel statute of 325E1 going forward unless it's... Why could we review that? Are you saying that from here on out, we cannot review that decision even though you're going to adopt it as a rule and it's going to apply to every case involving estoppel? We can't review that? That's correct, because it's, again, under this Court's case law, it's closely related and tied to the institution decision. And our position is that that is unreviewable, that this Court really should be focusing its time on the patentability, patent eligibility of these claims. See, I'm out of time, if there's no more questions. Okay, thank you. Thank you, Your Honors. In his remarks, Counsel for Westlake pointed out the fact that the Board in this case was not starting from a blank slate, that there had been a previous CBM decision. And counsel's correct in that regard. And that's noteworthy to appellant as well, because in that prior CBM, the Court looked at the claims that are instituted in this CBM and concluded in their institution decision where they declined to review the claims under 101, that those claims did not preempt all applications of a method of processing an application for financing. And they stated that that was a matter of fact. That's at Appendix 853. That fact can't have changed between then and now. The Board took a different view of the law in their second decision. But it underscores my point that the claims read as a collective whole in this case don't preempt the abstract concept that the Board stated these claims are directed to. There is room for others to practice and for others perhaps even to patent in the face of these claims. They don't invoke the concern about preemption that Alice and Mayo and Bilski and many of the decisions of this Court as recently as McGrow have invoked. There are some other things in Westlake's presentation and actions in this proceeding that I think act as essentially collateral support for the points that I'm asking you to accept today. One, I've made the point that the Court in the Bascom Step 2, pardon me, in the Alice Step 2 analysis did not consider the ordered combination. And Westlake's brief to this Court on page 48 essentially admits as much when it states in holding that each element was not an inventive concept that PTAB held that the overall invention was not patent eligible. There was never a consideration or a holding that the overall invention that this combination of steps in claims 10, 14, 25 and all the others at issue was not inventive. On the contrary, page 828 in the Board's decision they declined to consider the evidence that we put forward to show that these things were inventive or conventional or not routine. I see my time is up, Your Honor, and I will conclude at that point. Okay. Thank you, Mr. Newman. Thank you.